J. K. & M. H. PINNIX, *vs.* THE CHARLOTTE AND SOUTH CAROLINA
RAILROAD COMPANY.

1. When goods are shipped to a consignee over a railway, the shipper cannot, by notice to the carrier compel him to stop the goods at an intermediate point.

2. Whether an agent of such carrier may not bind his principal by an express contract to hold the goods *quere*, but such contract must at least be an express one.

3. Where tobacco was shipped from Thomasville *via* Charlotte and consigned to a party in Columbia and was sent off from Charlotte, by rail to Columbia according to the bill of lading, and the tobacco was received by the consignee in Columbia, but no express contract to hold at Charlotte was shown, the measure of the shipper's damages is the cost to send it back, or what it would have cost to send it back, and compensation for the delay.

4. The receipt of the tobacco by the consignee and having it stored, was not a waiver of the liability of the defendant, for sending it without orders, for the plaintiffs were not obliged to give up their tobacco by refusing to receive at Columbia, and charge the whole value to the defendant, nor were they obliged to send it back and charge the defendant with the expense and delay; they had their election to receive the tobacco, keep it in Columbia and charge the defendant, with what it would have cost, to put the tobacco back in the place from which it was wrongfully sent.

5. The shipment of tobacco from Charlotte to Columbia on the 4th day of February, 1865, cannot be deemed, the proximate cause of its loss, by the burning of Columbia by Gen. Sherman, on the 17th of the same month.

The case *Bell* vs. *Bowen*, 1 *Jones*, 316, cited and distinguished.

This was an action on the case commenced under the former system and tried at Fall Term 1871, of Rowan Superior Court, before His Honor Judge Cannon and a jury.

The action was brought to recover damages for the loss to plaintiffs of a large quantity of manufactured tobacco, alleged to have been lost, in consequence of the neglect of the defendant to obey the plaintiff's instructions to stop the same while

in transit.   It was in evidence that the tobacco was shipped at Thomasville, on the N. C. R. R., and consigned to one Solomon, in Columbia ; that at Charlotte it had to be re-shipped on the road of the defendant, one of whose *termini* was Charlotte.

That one of the plaintiff's went to Charlotte and reached there before the tobacco was put in charge of the defendant.

That the defendant's agent, at his request, expressly agreed to hold the tobacco for a few days, but that the same was forwarded in violation of this promise ; that on learning this the plaintiffs made application to the President of the defendant to re-ship the tobacco from Columbia, which he declined to do.

It was also in evidence that the tobacco was started from Charlotte about the 4th of February, 1865, and that Columbia was destroyed by fire, by Gen. Sherman's army, on the 17th of the same month, and the tobacco was consumed in the conflagration.

There was also evidence tending to show the price of such tobacco, at the date of its loss in Charlotte, in Salisbury, about 40 miles distant, and at Columbia, 110 miles from Charlotte.

There was much evidence offered by defendant tending to contradict and rebut the force of the plaintiff's testimony, but it is deemed unimportant to state it, to a proper understanding of the case.

His Honor was requested by the plaintiff, in writing, to give the jury the following instructions, viz :

1. That if the jury find from the evidence that plaintiff, before defendant received the tobacco, instructed the defendant's agent at the Charlotte Depot, not to ship on defendant's road to Columbia until ordered to do so by plaintiff, and defendant's agent did ship said tobacco without awaiting such orders, and within the time stated by the witness Martin, and afterwards the tobacco was destroyed by fire in Columbia, on the 17th February, 1865, the plaintiff would be entitled to recover such sum as the jury find the tobacco to have been worth in Charlotte at that time, and the jury may give interest on that amount from the time of the loss of the tobacco.

2. That if the jury find the facts to be as above stated, then it is immaterial whether J. K. Pinnix gave his instructions to the *defendant* in writing, or whether Martin said on the return of J. K. Pinnix, that " his clerks had either misunderstood or disobeyed him," and also whether Martin was present at the loading into the defendant's car of a few of the remaining 42 boxes, or whether J. K. Pinnix had the conversation with Wm. Johnston or not.

3. That if plaintiff, J. K. Pinnix, instructed A. H. Martin, defendant's agent, not to ship the tobacco to Columbia until he was ordered to do so, although plaintiff was a stranger to said Martin, and exhibited no receipt, yet as Martin did not notify him, that he required him to furnish him evidence of his ownership, of said tobacco, before he would obey instructions, that the defendant would be bound to obey such instructions, and if the defendant afterward shipped the tobacco to Columbia, and it was burned in Columbia, and proved a total loss to plaintiff, then the defendant would be liable for the value of the tobacco.

The counsel for defendant asked the Court for the following instructions, viz:

I. That an action of tort cannot be sustained upon the facts of this case.

II. That if the jury find that there was no contract made between plaintiffs and Martin, as agent of defendant, as to the keeping of the tobacco for them, until the return of J. K. Pinnix from Columbia, then there was no breach of duty, and the action in tort cannot be sustained.

III. Trover will not lie, because the allegation, if established, created a bailment, and the principle is, where property bailed has been lost by negligence of the bailee, trover will not lie.

IV. The plaintiffs allege that there was a contract, and a breach of duty under it, and he must establish the truth of his allegation by a preponderance of testimony, otherwise the jury must find for defendant on this part of the case.

V. The tobacco was not in possession of Martin, as agent of defendant, at the time notice was given to him to stop it, and to hold it for further directions from plaintiffs, and therefore the principle of "stoppage *in transitu*" does not apply.

VI. Before the plaintiffs could constitute Martin, as agent of defendant, his bailee, he must pay the expenses on the tabacco to the North Carolina Railroad, receive the tobacco from it, and deliver it to the defendant's agent.

VII. Before defendant was bound to heed the notice of plaintiff, not to forward the tobacco, as Martin did not know him, it was the duty of plaintiff to furnish Martin with reasonable proof that he had the legal right to control the tobacco.

VIII. The agent of the North Carolina Railroad was the forwarding agent of the plaintiffs, and when the tobacco was delivered by the agent of that road, the defendant was bound to forward it to the consignee.

IX. That as the goods were received by the consignee in Columbia in good order, and taken charge of by him, with approval of plaintiffs, and ordered to be sold, that the liability of defendant as a common carrier ceased, and plaintiffs are not entitled to recover, or if entitled to recover at all, are only entitled to nominal damages.

X. Defendant was a common carrier and not a warehouseman, and as such was not under legal obligation to receive the goods of plaintiff and hold the same subject to his will.

His Honor, amongst other matters not excepted to, instructed the jury as follows:

That this case was to be tried like all other cases between individuals, remarks about bloated corporations have nothing to do with it. The first question is, has a wrong been done to the plaintiffs? Plaintiffs allege that defendant is responsible for their lot of tobacco. If defendant received the tobacco the relation of bailor and bailee was created. The witness Pinnix says, he went to Charlotte and told agent of defendant

not to ship the tobacco to Columbia until further orders; also that 88 boxes were sent to Columbia in violation of his orders, and he lost the tobacco, and that if his orders had been obeyed, he would not have lost it. The witness Pinnix says, he told defendant's agent not to ship the tobacco until he returned from Columbia.

If you believe the tobacco was shipped contrary to plaintiffs orders, and plaintiffs lost it in consequence of it, plaintiff can recover something at least. But the witness Martin says, he did not know Pinnix was the owner, and therefore disobeyed him, and was not bound to obey him, and did not promise to hold the tobacco; that would be so if he had asked Pinnix to identify himself, that is a question for you. Pinnix said, he, (Martin,) never requested him to identify himself, and that Martin said that his hands had violated orders.

Then how much can the plaintiff recover on the counts in case?

Plaintiff can recover whatever damages *he* sustained by disobedience of *his* orders, and it is for you to find the value of the tobacco, or whatever of it you say he lost by his orders being disobeyed. The evidence was, there were 88 boxes and 100 pounds to the box, and the value according thereto, ranged from ten cents to seventy cents per pound, that the condition of the country made it difficult for persons to retain possession of property at that time, and it is for you to say what it was worth under all the circumstances.

The defendant asks me to charge, that before plaintiffs can recover, he must offer a preponderance of testimony, that if the evidence is equal, the plaintiff cannot recover, this is so, it must preponderate in favor of the plaintiff before he can recover.

The counsel for plaintiff asked the Court to give the instructions heretofore set forth which were allowed by His Honor, and the jury instructed in accordance therewith, with the further instruction, that if the jury found for plaintiff, they would

find the value in United States currency; they should consider what tobacco of that quality was worth in Salisbury and Co lumbia, in order to find the value at Charlotte, and also to consider what Pinnix said in his letter as to its value.

Counsel for defendant asked the Court to give the instructions heretofore set forth. As to the I and II His Honor charged, if the defendant received the tobacco as a common carrier, the relation of bailor and bailee would be established, and then if the orders were given to retain the tobacco and disobeyed, plaintiffs would be entitled to recover.

That as to instruction No. III, His Honor charged there ·was a count in case in the declaration, and also in trover, and that plaintiff could not recover in trover; as to No. IV, he stated he had given instructions as to the preponderance of testimony; as to the V, he charged that if the property came into the possession of Martin, as agent of defendant, after the order was given, it was "*en route*," and he would be bound to obey instructions. VI instruction refused, if defendant received the property it made no difference whether freight was paid or not; as to VII instructions, he charged, this would be true if Martin had demanded it. J. K. Pinnix said he was one of the firm of J. K. and M. H. Pinnix, and if Martin had said "I do not know you," he should have offerred evidence to identify himself, and whether he did or did not, was for the jury.

The VIII instruction refused, that the owner of the tobacco had a right to control it.

The IX and X instruction refused. His Honor further charged the jury, that plaintiffs can only recover, in *case*, whatever the jury find that they suffered by a failure of defendant to stop their tobacco, and it was for the jury to say whether the damage was for the total loss or partial loss. His Honor left it as a question of fact for the jury whether plaintiffs had instructed defendant's agent not to ship, reciting in that connection in short, both the testimony of J. K. Pinnix and A. H. Martin.

Under these instructions a verdict was rendered for the plaintiffs ; and from the judgment rendered, the defendant appealed.

*J. H. Wilson*, for the appellant.
*Blackmer* & *McCorkle*, and *Bailey* for appellee.

Pearson, C. J.   The plaintiff's counsel asked His Honor to instruct the jury, that " if plaintiff, before defendant, received the tobacco, instructed defendant's agent at the Charlotte depot, not to ship on defendant's road to Columbia, until ordered to do so, by plaintiff, and defendant's agent did ship the tobacco without awaiting such orders, the plaintiff was entitled to recover.   His Honor so charged, and the case is made to turn upon the right of the plaintiff to give the order and have it obeyed.   In this, there is error.

The contract was to carry the tobacco from Thomasville to Columbia, and there deliver it to the plaintiff's consignee ; we see no principle upon which the contract can be modified by inserting a provision, that the plaintiff shall have the right to order the tobacco to be held over at Charlotte for a few days. It takes two to make a contract, and two to modify or vary it. A contract once made cannot be dissolved or varied, except by the consent of both of the contracting parties.   This is a plain principle.   The plaintiff's counsel, when pressed with it, was not able to cite a case or to give any satisfactory reason in support of the position taken by him.   How did the plaintiff acquire a right to give orders to the defendant's agent to hold over the tobacco at an intermediate place between Thomasvile and Columbia ?   We can only look to the contract, and, there is no such stipulation in it.

It may be, that its agent by an express contract to hold goods over for a few days, at an intermediate station, can bind the company.   The supposed consideration being a general benefit, of an increase of business, by accommodation of this kind extended to customers ; but it is certain, this new con-

tract, or rather this addition to the original contract, must be express, and there is nothing from which it can he implied, or it may be, that a promise of the agent to hold the goods over at Charlotte, will be treated as a mere act of complaisance on his part, but *nudum pactum* in respect to the company. If the purpose of the plaintiff was to reserve the right to hold the goods over at Charlotte, why did he not have that stipulation set out in the receipt or bill of lading ? or why did he not ship to Charlotte in the first instance ? This point is not presented, and we express no decided opinion.

The fact of an express promise by the agent ought to have been passed upon by the jury, and the defendant has a right to complain that the instruction excluded the question.

A shipper has no right to have the goods delivered to him, at an intermediate station where the bulk is not broken, except by the assent of the company; even should he offer to pay the freight, through, to the point of destination; for, it is not in the contract. We are inclined to think, however, that at a station like Charlotte, where the bulk is broken, that is, where the goods are unloaded, and transferred to another car or to the warehouse the shipper may, upon tendering the full freight, and indemnity against the consignee, require that the goods be delivered to him there, and not be carried further. On the principle, that having the goods carried, is for his benefit alone, and he may dispense with a part of that stipulation in the contract, the fright being all that concerns the company; as if one employs an overseer for a year at a fixed price, by paying up the full price he may dispense with further service; but this is a very different thing from instructing the agent, at an intermediate station, to hold the goods over until further instructions; thereby holding on to the contract, and adding to or varying its terms. This can only be done, if at all, by express agreement, with the agent acting for the company.

The defendants counsel asked His Honor to instruct the jury, that " if the plaintiff was entitled to recovor, the dama

ges should be nominal." This, His Honor refused, but in effect charged that the measure of damages, was the value of the tobacco at Charlotte, on the day it was sent off. In this there is error.

The plaintiff received his tobacco in Columbia, and his consignee stored it in his own warehouse. If the plaintiff did not conclude to keep the tobacco, all he had to do was to send it back to Charlotte, and the measure of damages would have been the cost of sending it back, and compensation for the delay. He did not howveer choose to send it back, but had it stored in Columbia, and the measure of damages is the same, certainly it cannot be more, for the plaintiff made his election to keep it in Columbia with full knowledge of the surrounding circumstances ; indeed, if the price of tobacco was as good in Columbia as at Charlotte, it would seem the damages should be nominal. It was suggested that the receipt of the tobacco and having it stored in Columbia was a waiver of the liability of the defendant for sending it without orders, or at least reduced the damages to a mere nominal sum—we do not think so, for the plaintiff was not obliged to give up his tobacco, by refusing to receive it in Columbia and charge the whole value to the defendant; nor was he obliged to send it back and charge the defendant with the expense and delay—he had his election to receive the tobacco and keep it in Columbia, and charge the defendant with what it would have cost to put the tobacco back in the place from which it was wrongfully sent.

The case of *Bell* vs. *Bowen*, 1 *Jones*, 316, relied on by the plaintiff, for fixing the value of the tobacco at Charlotte as the measure of the damages does not sustain the position. There, if the man was carried out of the county, or worked on water, it was to be at the risk of the bailee ; the contract was violated and the negro died during the year, *so that the owner never got him back*, here the plaintiff did get his tobacco back. Note the diversity.

Suppose, in that case the negro had been alive at the end of the year, sound and hearty, but the bailee had refused or neglected to send him home, and the owner was obliged to go to the other county and get him ; the measure of his damages would have been, the sum expended in bringing him home, and something for the delay.

So, in our case, the measure, is, the sum that would have been necessarily expended in putting the tobacco back where it was before and something for the delay ; indeed, this seems to have been the measure fixed by the plaintiff, in his own mind, when he required the President of the road to have the tobacco brought back to Charlotte; this, the President it seems, declined to do, probably because he did not admit the right of the plaintiff to order the agent of the company to hold the tobacco at Charlotte. The effect of this refusal, was only to put on the company, a liability to pay, what it would cost to send it back, and compensation for the delay ; *provided*, the President was mistaken as to the right of the plaintiff to require that it should be sent back. But, it is said that would all have been well enough, if the tobacco had not been burnt, when Sherman's army occupied Columbia. This is the gravemen of the action. We are unable to see how the act of the defendant, in sending the tobacco from Charlotte to Columbia, contrary to orders, was the cause of its being burnt, some ten or fifteen days afterwards, when Gen. Sherman's army occupied Columbia. The coming of Gen. Sherman and the fire was not a necessary or a probable consequence of sending the tobacco to Columbia. In the language of the books the cause is not proximate but remote ; and in fact altogether unexpected. On the 1st of February, the plaintiff ships his tobacco to Columbia; on the 7th February, he writes to his consignee, after having in the meantime visited Columbia, how to dispose of the tobacco, and wishes to be advised as to prices for the purpose of sending more ; so he had no fear that Sherman would come, and that his coming would incidentally cause the tobacco

to be burnt. It is not for him, now to say, that the sending of the tobacco to Columbia on the 4th of February was the cause of its being burnt. In short that was a result not looked for by him or by the defendant; and as he had the tobacco stored in a private warehouse, to be used by himself to the best advantage, the loss must fall upon him. I hire my riding horse, to be returned in two days; the bailee neglects to return the horse. In the meantime I have occasion to go to some place and for the want of a horse undertake to walk, and trip so as fall and break my leg. Is the bailee liable to pay for this injury, or only to make compensation for the proximate and natural consequence of his violation of the contract? Again, a railroad by negligence fails to make connection; a passenger happens to be under recognizance to appear at some court; forfeits his recognizance and has to pay a large amount by reason of his failure to appear. Is the railroad company liable to pay the amount of the recognizance or only the ordinary and necessary expense caused by the delay? Carry the illustration from *Bell* vs. *Bowen* further : Suppose the owner at the end of the year had received the slave, and while re-crossing Albemarle Sound the slave happened to be drowned, the loss would fall on the owner, for the act of taking the slave out of the county, is not the proximate cause of his death, although it may be, that but for that, he would not have been drowned. *Broom's Legal Maxims*, 203,209. *Mayne, on the law of damages*, 15.

These are familiar and settled principles. The only difficulty is in making the application. We are satisfied his Honor erred in supposing that the act of the defendant, in sending the tobacco from Charlotte to Columbia, on the 4th of February, was the proximate cause of the fact that the tobacco was burnt on the 17th of February, thirteen days thereafter. Follow out the reasoning, and the defendant would have been chargeable with the value of the tobacco, if it had been

.destroyed six or twelve months after it was sent from Charlotte.

ERROR.                                          *Venire de novo.*